IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 16-65980-jrs |
| SUSAN DEBRA BURRIS, | CHAPTER: 13 |
| Debtor. | JUDGE: JAMES R. SACCA |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST SERIES 2015-1, | CONTESTED MATTER |
| Movant, | |
| v. | |
| SUSAN DEBRA BURRIS, Debtor WILLIAM BURRIS, Co-Debtor NANCY J. WHALEY, Trustee, | |
| Respondent(s). | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and the Co-Debtor Stay, as well as related papers with the Court seeking an Order Granting Relief from the Automatic Stay and the Co-Debtor Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1404, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 10:30 A.M., on July 11, 2017.

**NOTICE TO CO-DEBTOR:** This Motion seeks relief from the co-debtor stay pursuant to 11 USC Section 1301. If you do not file and serve a written objection to this Motion within 20 days from the date this Motion was filed, the Motion may be granted and the co-debtor stay may be terminated. Objections shall be filed with the Clerk, U.S. Bankruptcy Court, at the address shown in the next paragraph, and shall be served by U.S. Mail on the undersigned attorney whose name and address appear at the end of this notice.

**NOTICE TO DEBTOR:** Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the

Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

     If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

/s/ *Bryce Noel*
Bryce Noel, Bar No.: 620796
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: BNoel@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 16-65980-JRS |
| SUSAN DEBRA BURRIS, | CHAPTER:  13 |
| Debtor. | JUDGE:  JAMES R. SACCA |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST SERIES 2015-1, | CONTESTED MATTER |
| Movant, | |
| v. | |
| SUSAN DEBRA BURRIS, Debtor WILLIAM BURRIS, Co-Debtor NANCY J. WHALEY, Trustee, | |
| Respondent(s). | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## AND THE CO-DEBTOR STAY

COMES NOW Movant named above and shows this Court the following:

1.      This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Security Deed.

2.      Movant is the holder or the servicer of a loan secured by certain real property in which the Debtors have an interest. Said real property is security for a Promissory Note, and is commonly known as 4921 October Way NW, Acworth, Georgia  30102.

3.      There has been a default in mortgage payments which have come due since this case was filed. As of May 23, 2017, five (5) post petition payments have been missed.

4.    The unpaid principal balance is $152,397.85, and interest is due thereon in accordance with the Promissory Note.

5.    Because of the default and clear inability to make all required payments, Movant is not adequately protected.

6.    Movant requests that in the event the Motion is granted, the Trustee be ordered to cease funding any balance of Movant's claim.

7.    Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived.

WHEREFORE, Movant prays for an Order lifting the automatic stay and co-debtor stay, authorizing it to proceed with the exercise of its private power of sale and to foreclosure under its Loan Documents and appropriate state statutes, and for an award of reasonable attorney's fees. Movant also prays that Fed. R. Bankr. P. 4001(a)(3) be waived. Movant also prays that the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that Movant be permitted to contact the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, and for such other and further relief as is just and equitable.

/s/ *Bryce Noel*
Bryce Noel, Bar No.: 620796
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: BNoel@aldridgepite.com

Multistate                          **NOTE**

August 26, 2008
[Date]

**4921 OCTOBER WAY NW, ACWORTH, GEORGIA 30102**
[Property Address]

**1.     PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.  "Lender" means
CORNERSTONE HOME LENDING
and its successors and assigns.

**2.     BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Fifty Four Thousand Nine Hundred Fifty Five And 00/100
Dollars (U.S. $   154,955.00), plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of
disbursement of the loan proceeds by Lender, at the rate of Six and Three-Fourths percent (6.7500%) per year until the full amount of
principal has been paid.

**3.     PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

**4.     MANNER OF PAYMENT**

(A)     Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on October 1,
2008.  Any principal and interest remaining on the first day of September, 2038 will be due on that date, which is called the
"Maturity Date."

(B)     Place

Payment shall be made at 1177 WEST LOOP SOUTH #200,
HOUSTON, TEXAS  77027 or at such place as Lender may designate in writing by notice to Borrower.

(C)     Amount

Each monthly payment of principal and interest will be in the amount of U.S. $   1,005.04.  This amount will be part of a
larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order
described in the Security Instrument.

(D)     Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower, together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this
Note.  [Check applicable box]

[ ] Graduated Payment Allonge     [ ]  Growing Equity Allonge     [ ] Other [specify]

**5.     BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day
of any month.  Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the
remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial
prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to
those changes.

**6.     BORROWER'S FAILURE TO PAY**

(A)     Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of
this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four  percent
(4.00%) of the overdue amount of each payment.

(B)     Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the
Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued
interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  In many
circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of
payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note,
"Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C)     Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and
expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.
Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

FHA Multistate Fixed Rate Note - 10/95

Page 1 of 3

Initials BB  8B

usfhota

7.    WAIVERS
Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8.    GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_William Burris_ (Seal)
WILLIAM BURRIS                -Borrower

_Susan Burris_ (Seal)
SUSAN BURRIS                -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Pay to the order of: CORNERSTONE MORTGAGE COMPANY
Without Recourse

CINDY ANNIS - MORTGAGE REPRESENTATIVE
CORNERSTONE HOME LENDING

Pay to the order of:
Without Recourse                Countrywide Bank, FSB

CINDY ANNIS - SR. VICE PRESIDENT
CORNERSTONE MORTGAGE COMPANY

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _Laurie Meder_
LAURIE MEDER
SENIOR VICE PRESIDENT

FHA Multistate Fixed Rate Note - 10/95

Deed Book 14640 Pg 603
Filed and Recorded Sep-22-2008 11:30am
Georgia Intangible Tax Paid $0.00

*Jay C. Stephenson*

Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

Deed Book 14634 Pg 59
Filed and Recorded Jun-20-2008 02:58pm
Georg...............................00

*Jay C. Stephenson*

Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

114164

Return To:
CORNERSTONE HOME LENDING
1177 WEST LOOP SOUTH #200
HOUSTON, TEXAS 77027
Attn: FINALIZATION DEPARTMENT

Prepared by:
CORNERSTONE HOME LENDING
1177 WEST LOOP SOUTH, SUITE 200
HOUSTON, TEXAS 77027

Return To:
Raimondi & Associates, LLC
3391 Town Point Drive
Suite 315
Kennesaw, GA 30144

15 20-15          *Re-record to add Waiver of borrower's rights*

_____[Space Above This Line For Recording Data]_____

State of Georgia

## SECURITY DEED

| FHA Case No. |
|---|
| 105-4003977-703 |

MIN 1001770-3300002054-1
MERS TELEPHONE: (888) 679-6377

THIS SECURITY DEED ("Security Instrument") is given on **August 26, 2008**. The Grantor is
**WILLIAM BURRIS AND SUSAN BURRIS JOINT TENANCY WITH ROS** and whose address is **4921
OCTOBER WAY NW, ACWORTH, GEORGIA 30102** ("Borrower"). This Security Instrument is given to
Mortgage Electronic Registration Systems, Inc., ("MERS"), (solely as nominee for Lender, as hereinafter
defined, and Lender's successors and assigns), as grantee. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-
MERS. **CORNERSTONE HOME LENDING**, ("Lender") is organized and existing under the laws of **THE
STATE OF TEXAS**, and has an address of **1177 WEST LOOP SOUTH, SUITE 200, HOUSTON, TEXAS
77027**. Borrower owes Lender the principal sum of **One Hundred Fifty Four Thousand Nine Hundred Fifty
Five And 00/100** Dollars (U.S. $ **154,955.00**). This debt is evidenced by Borrower's note dated the same date
as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier,
due and payable on **September 1, 2038**. This Security Instrument secures to Lender: (a) the repayment of the
debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 1 of 9                                    Initials: B.B.  SB

gafmertd

d Book 14634 Pg    60

Deed Book 14640 Pg  604

payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns), and the successors and assigns of MERS, with power of sale, the following described property located in **CHEROKEE** County, Georgia:

**SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES**

Property Tax ID Number: **20001502150**
which has the address of **4921 OCTOBER WAY NW** [Street] **ACWORTH** [City], Georgia **30102** [Zip Code] ("Property Address");

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 2 of 9

Initials: B.B. SB

Deed Book 14634 Pg 61

Deed Book 14640 Pg 605

rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Initials: B.B. 8

Deed Book 14634 Pg 62

Deed Book 14640 Pg 606

of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 4 of 9

Initials: B.B. SB

Deed Book 14640 Pg 607

d Book 14634 Pg  63

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 5 of 9

Initials: B.B. 8B

Deed Book 14634 Pg 64

Deed Book 14640 Pg 608

tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 6 of 9

Initials: B.B. 8B

d Book 14634 Pg    65

Deed Book 14640 Pg 609

Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by**

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 7 of 9

Initials: B.B. 8

Deed Book 14634 Pg 66

Deed Book 14640 Pg 610

this Security Instrument; and (e) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

21. **Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

22. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[ ] Condominium Rider          [ ] Growing Equity Rider       [X] Other(s) [specify]
[X] Planned Unit Development Rider  [ ] Graduated Payment Rider    WAIVER   OF   BORROWER'S
                                                                RIGHTS RIDER
                                                                EXHIBIT "A"

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 8 of 9

Initials: B.B.

Deed Book 14634 Pg   67

Deed Book 14640 Pg  511

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument

_____        _William Burris_____ (Seal)
                                  **WILLIAM BURRIS**                -Borrower

_____        _____ (Seal)
                                  **SUSAN BURRIS**                 -Borrower

_____        _____ (Seal)
                                                                  -Borrower

_____        _____ (Seal)
                                                                  -Borrower

**STATE OF GEORGIA,**                               County ss: Cobb
          Signed, sealed and delivered in the presence of:

                                  _____
                                  Unofficial Witness

                                  _____
                                  Notary Public,                  County
                                  State of Georgia

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01
                          Page 9 of 9

d Book 14634 Pg    68

Deed Book 14640 Pg 612

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 26th day of August, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **CORNERSTONE HOME LENDING** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**4921 OCTOBER WAY NW, ACWORTH, GEORGIA 30102**
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**QUAIL POINT**
[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the

FHA Multistate PUD Rider – 10/95
589U (0402).01                           Page 1 of 3                         Initials: B.B. 8b
usfpud



Deed Book 14640 Pg 613

Deed Book 14634 Pg 69

Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.    Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard.   In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.    Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.    If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.   Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA Multistate PUD Rider – 10/95
589U (0402).01                                        Page 2 of 3                                Initials: B.B. 8B

Deed Book 14640 Pg 614

Deed Book 14634 Pg 70

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_William Burris_ (Seal)
WILLIAM BURRIS                      -Borrower

_Susan Burris_ (Seal)
SUSAN BURRIS                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

FHA Multistate PUD Rider – 10/95
569U (0402).01                      Page 3 of 3

Deed Book 14634 Pg 71

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 15 OF THE 20TH DISTRICT, 2ND SECTION OF COBB COUNTY, GEORGIA AND BEING LOT 47, BLOCK E, QUAIL POINTE, UNIT III, PHASE 1, AS PER PLAT RECORDED AT LPAT BOOK 126, PAGE 98 AS REVISED AT PLAT BOOK 128, PAGE 21, AS REVISED AT PLAT BOOK 129, PAGE 24, COBB COUNTY RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS DESCRIPTION; SAID PROPERTY BEING KNOWN AS 4921 OCTOBER WAY, ACWORTH, GEORGIA 30102, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING HOUSES IN COBB COUNT, GEORGIA.

B.B. 8B

14932 PG: 6061

12:32AM

*Jay C. Stephenson*

JAY C. STEPHENSON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

This space for Recorder's use

| Recording Requested By: | When recorded mail to: |
|---|---|
| **Bank of America** | **CoreLogic** |
| Prepared By: | 450 E. Boundary St. |
| **Danilo Cuenca** | Attn: Release Dept. |
| 888-603-9011 | **Chapin, SC 29036** |
| 450 E. Boundary St. | |
| **Chapin, SC 29036** | |

Property Address:
**4921 October Way NW**
Acworth GA 30102-7910

3/26/2012

## ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **451 7TH ST.SW #B-133, WASHINGTON DC 20410** all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

| Original Lender: | **CORNERSTONE HOME LENDING** |
|---|---|
| Made By: | **WILLIAM BURRIS AND SUSAN BURRIS JOINT TENANCY WITH ROS** |
| Date of Security Deed: | **8/26/2008** |
| Original Loan Amount: | **$154,955.00** |

Recorded in **Cobb County, GA** on: **8/28/2008**, book **14634**, page **59** and instrument number **2008-0118141**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on
**MAR 27 2012**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____        By: _____
    Jane Martorana Assistant Secretary         **Miguel Romero Vice President**

Witness: _____     Witness: _____
        Christopher Herrera                         **Chester Levings**

State of **California**
County of **Ventura**

On **MAR 27 2012** before me,  Lillian J  Ellison
appeared       Jane Martorana       and  **Miguel Romero** Notary Public, personally , who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person
(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____
           Lillian J. Ellison
My Commission Expires:      March 13, 2015

LILLIAN J. ELLISON
Commission # 1925617
Notary Public - California
Los Angeles County
My Comm. Expires Mar 13, 2015
(Seal)

When Recorded Mail To:
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236

BK45144 PG: 2964
Filed and Recorded Mar-19-2014 03:06:19PM
DOC#: D2014-017235

REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

### ASSIGNMENT OF DEED TO SECURE DEBT
### GEORGIA

This **ASSIGNMENT OF DEED TO SECURE DEBT** from **BANK OF AMERICA, NATIONAL ASSOCIATION**, whose address is c/o Ocwen Loan Servicing, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignor") to **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2** whose address is c/o Ocwen Loan Servicing, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the rights, title and interest of said Assignor in and to the following instruments describing land therein, duly recorded in the Office of the County Recorder of **CHEROKEE** County, State of GEORGIA, as follows:

Cobb

Grantor: WILLIAM BURRIS AND SUSAN BURRIS
Grantee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR CORNERSTONE HOME LENDING
Document Date: AUGUST 26, 2008
Amount: $ 154,955.00
Date Recorded: AUGUST 28, 2008
Instrument : 2008-0118141
Book/Volume/Docket/Liber: 14634                                                    Page/Folio: 59
Re-Recorded Date: SEPTEMBER 30, 2008
Instrument : 2008-0130920
Book/Volume/Docket/Liber: 14640                                                    Page/Folio: 603
Property Address: 4921 OCTOBER WAY NW, ACWORTH, GA 30102

This Assignment is made without recourse.
DATED: OCTOBER 29, 2013

BANK OF AMERICA, NATIONAL ASSOCIATION
BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC

BY:
NAME: Joel Piras
TITLE: Contract Manager
Power of Attorney recorded on : DECEMBER 21, 2012
Book: 12152        Page: 485
Instrument number : 28-2012-043498

STATE OF FLORIDA        )
                        )SS.
COUNTY OF PALM BEACH    )

ATTESTED BY:

NAME: Leticia N. Arias
TITLE: Contract Manager

Witness:

(1)                                Derek Garrett

(2)                                Christian Lazu

The foregoing instrument was acknowledged before me on this 29TH DAY OF OCTOBER 2013, by
_____ Joel Piras _____, Contract Manager at OCWEN LOAN SERVICING, LLC, Attorney in fact for BANK OF AMERICA, NATIONAL ASSOCIATION, on behalf of the company.  He/She is personally known to me.

Notary Public –                   Christian J. Ferrer

Prepared By: Joe Simmons
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835

Notary Public State of Florida
Christian J Ferrer
My Commission FF 062234
Expires 12/30/2016

Deed Book 15359 Pg 5565
Filed and Recorded Jul-28-2016 02:24pm

*Rebecca Keaton*

Rebecca Keaton
Clerk of Superior Court Cobb Cty. Ga.

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Space above for Recorder's use

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2**, whose address is **C/O ALTISOURCE ASSET MANAGEMENT CORPORATION, 36C STRAND STREET, CHRISTIANSTED, USVI 00820**, (ASSIGNOR), does hereby grant, assign and transfer to **WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2015-1**, whose address is C/O ALTISOURCE ASSET MANAGEMENT CORPORATION, 36C STRAND STREET, CHRISTIANSTED, USVI 00820, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: 8/26/2008
Original Loan Amount: $154,955.00
Executed by (Borrower(s)): WILLIAM BURRIS AND SUSAN BURRIS
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CORNERSTONE HOME LENDING, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book 14634, Page 59,
Document/Instrument No: 2008-0118141 in the Office of County Recorder of **COBB** County, GA, Recorded on 8/28/2008.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: 4521 OCTOBER WAY NW, ACWORTH, GEORGIA 30102.

Deed Book 15359 Pg 5566

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 6-28-2016

**CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2**

By: **HEATHER NEAL**
Title: **VICE PRESIDENT**
FAY SERVICING, LLC, AS ATTORNEY-IN-FACT FOR CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2

Witness Name: **WILLIAM HERMAN**

By: **KATHLEEN COLLINS**
Title: **VICE PRESIDENT**
FAY SERVICING, LLC, AS ATTORNEY-IN-FACT FOR CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2

Witness Name: **BRUCE DORAN**

Deed Book 15359 Pg 5567

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
> THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
> TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **FLORIDA**
County of       **PINELLAS**

On 6/28/16_____, before me, SHARON MITCHELL, a Notary Public, personally
appeared **HEATHER NEAL, VICE PRESIDENT** and **KATHLEEN COLLINS, VICE PRESIDENT** of/for
**FAY SERVICING, LLC, AS ATTORNEY-IN-FACT FOR CHRISTIANA TRUST, A DIVISION OF
WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS
TRUSTEE OF ARLP TRUST 2,** personally known to me, or who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify
under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and
correct.  I further certify HEATHER NEAL and KATHLEEN COLLINS, signed, sealed, attested and delivered this
document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): SHARON MITCHELL
My commission expires: 3/23/2018

SHARON MITCHELL
MY COMMISSION # FF 104768
EXPIRES: March 23, 2018
Bonded Thru Budget Notary Services

Deed Book 15359 Pg 5568
Rebecca Keaton
Clerk of Superior Court Cobb Cty. Ga.

### EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 15
OF THE 20TH DISTRICT, 2ND SECTION OF COBB COUNTY, GEORGIA AND
BEING LOT 47, BLOCK E, QUAIL POINTE, UNIT III, PHASE 1, AS PER PLAT
RECORDED AT LPAT BOOK 126, PAGE 98 AS REVISED AT PLAT BOOK 128,
PAGE 21, AS REVISED AT PLAT BOOK 129, PAGE 24, COBB COUNTY
RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY THIS REFERENCE
AND MADE A PART OF THIS DESCRIPTION; SAID PROPERTY BEING KNOWN
AS 4921 OCTOBER WAY, ACWORTH, GEORGIA 30102, ACCORDING TO THE
PRESENT SYSTEM OF NUMBERING HOUSES IN COBB COUNT, GEORGIA.

**Prepared By & Return To:**
Fay Servicing, LLC
440 S. LaSalle St., 20th Floor
Chicago, IL 60605

<span>██████████</span>

_____[Space Above This Line For Recording Data]_____ ___ __ _____

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

Borrowers ("Borrower"):  WILLIAM BURRIS and SUSAN BURRIS
Lender ("Lender"):  _____Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its
individual capacity but solely as indenture trustee for ARLP Securitization Trust, Series 2015-1
Date of first lien Security Instrument ("Security Instrument") and Note ("Note"):  August 26, 2008
Property Address ("Property"):   4921 OCTOBER WAY NW, ACWORTH, GEORGIA 30102

This Loan Modification Agreement (the "Agreement"), amends and supplements the Security Instrument and Timely Payment Rewards Rider if any and the Note, bearing the same date as, and secured by the Security Instrument which covers the Property.  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

### RECITALS

WHEREAS, Borrower is prepared to make a principal payment of $1,335.56  and desires a modification of the Loan Documents, as set forth herein; and

WHEREAS, Lender has agreed to modify the Loan Documents in accordance with the terms and conditions set forth in this Agreement upon receipt of  $1,335.56 from Borrower.

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated herein by this reference, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrower agree as follows.

### COVENANTS AND CONDITIONS

1. This Agreement shall become effective and binding upon Lender's receipt and acceptance of:

    a. This Agreement, properly executed by Borrower, no later than December 24, 2015 .

    b. An ACH payment, certified check, money order, or personal check made payable to Fay Servicing, LLC in the amount of  $1,335.56  no later than December 30, 2015   (the "Good Faith Payment").

2. If the preconditions to the modification set forth in Section 1 have been met, Lender shall modify the Loan Documents as follows:

    a. As of February 01, 2016 , the amount payable under the Note and the Security Instrument will be reduced by $20,579.76 .  Thereafter, the remaining unpaid amount(s) loaned to

Page 1 of 6

Loan Modification Agreement

<span>██████████</span>

Borrower by Lender plus any interest and other amounts capitalized will be  $155,150.00 (the "New Principal Balance").

b.  Lender will amortize $155,150.00  of the New Principal Balance (the "Amortized Principal Balance") and defer the remaining $0.00  of the New Principal Balance until the Maturity Date (the "Deferred Principal Balance").

c.  On September 01, 2038  (the "Maturity Date"), Borrower promises to pay $0.00  (the "Balloon Payment") and $0.00  (the "Deferred Principal Balance") to the order of Lender.  If on the Maturity Date, Borrower still owes any amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  Borrower promises to pay the Amortized Principal Balance, plus Interest, together with all payments of taxes, insurance premiums, assessments, impounds, and all other related payments (the "Escrowed Funds") to the order of Lender, beginning on February 01, 2016 , and continuing thereafter on the first day of each succeeding month until the Amortized Principal Balance and Interest are paid in full.  Interest will begin to accrue on the Amortized Principal Balance at the yearly rate of 6.000 %, beginning on January 01, 2016 .  The monthly payment will be $1,044.83 for Principal and Interest, plus $296.09  for Escrow for a total monthly payment of $1,340.92.  Please note, however, that the amount of Borrower's Escrow payment may be adjusted periodically in accordance with applicable law and, therefore, the total monthly payment may change accordingly.

4.  Lender promises to maintain Borrower's Escrowed Funds in a separately managed account and to pay Borrower's related expenses with Borrower's Escrowed Funds.  Lender hereby revokes any waiver as to payment of Borrower's Escrow related expenses.

5.  If all of any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower s sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Loan Documents.  Borrower will continue to be obligated under the Loan Documents unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the Loan Documents.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com

6. Borrower promises to comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date of this Agreement:

    a. All terms and provisions of the Loan Documents (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in the Timely Payment Rewards Addendum to Note and Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    b. All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Loan Documents and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:

    a. If Borrower fails to fulfill the preconditions to the modification set forth in Section 1, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided under the Loan Documents.

    b. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    c. All covenants, agreements, stipulations, and conditions in the Loan Documents shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Loan Documents shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Loan Documents, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Loan Documents are expressly reserved by Lender.

    d. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Documents.

    e. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    f. Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

Loan Modification Agreement

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement and in any Rider attached hereto and executed by Borrower simultaneously herewith.

**BORROWER:**

*William Burris*

WILLIAM BURRIS

Witness Signature

Printed Name: _Anthony Glenn_

Witness Signature

Printed Name: _Jessica McPhail_

**ACKNOWLEDGMENT OF BORROWER:**

COUNTY OF _Fulton_

STATE OF _Georgia_    } ss.

On the _1_ day of _February_ , in the year 20 _16_ , before me, the undersigned, personally appeared <u>WILLIAM BURRIS</u>, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they did execute the foregoing instrument in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in the city of _Atlanta_ , state of _Georgia_ .

Notary Public

Printed Name: _Jacqueline B. Gleaton_

My commission expires: _6/12/2018_

JACQUELINE B GLEATON
MY COMMISSION EXPIRES
NOTARY
PUBLIC
JUNE 12, 2018
FULTON COUNTY, GEORGIA

Page **4** of 6

Loan Modification Agreement

**BORROWER:**

SUSAN BURRIS

Witness Signature

Printed Name: Anthony Chun

Witness Signature

Printed Name: Jessica McPhail

**ACKNOWLEDGMENT OF BORROWER:**

COUNTY OF Fulton }

}  ss.

STATE OF Georgia }

On the 1 day of February , in the year 20 16 , before me, the undersigned, personally appeared SUSAN BURRIS , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they did execute the foregoing instrument in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in the city of Atlanta , state of Georgia .

Jacqueline B. Gleaton
Notary Public

Printed Name: Jacqueline B. Gleaton

My commission expires: 6/12/2018

*[Notary Seal: JACQUELINE B GLEATON, MY COMMISSION EXPIRES, NOTARY PUBLIC, JUNE 12, 2018, FULTON COUNTY, GEORGIA]*

Loan Modification Agreement

**LENDER:**

**Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely as indenture trustee for ARLP Securitization Trust. Series 2015-1**

FAY SERVICING, LLC, its attorney-in-fact

By: _____

Name: _____

Its: _____

Loan Modification Agreement                    **Page 6 of 6**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE:

SUSAN DEBRA BURRIS,

          Debtor.

Case No. 16-65980-JRS

Chapter 13

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the May 30, 2017, I served a copy of **Notice of Hearing and Motion for Relief from the Automatic Stay and Co-Debtor Stay** which was filed in this bankruptcy matter on the May 30, 2017, in the manner indicated:

**The following parties have been served via e-mail**:

Jeffrey B. Kelly
R43962@notify.bestcase.com

Nancy J. Whaley
ecf@njwtrustee.com

**The following parties have been served via U.S. First Class Mail**:

Susan Debra Burris
4921 October Way
Acworth, GA 30102

William Burris
4921 October Way
Acworth, GA 30102

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: May 30, 2017

/s/ *Bryce Noel*

Bryce Noel, Bar No.: 620796
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: BNoel@aldridgepite.com